Richard Ingebretson, Your Honor. Mr. Ingebretson? Yes, sir. Good morning. You may proceed. Good morning, Your Honors. And may it please the Court, Richard Ingebretson for the appellants, Secretary Noem et al. I'm going to try my best to reserve one minute for rebuttal, though there is a lot to get through. This case involves a challenge to USCIS's denial of an adjustment of status appellate. Don't speak too fast, because there's a lot to go through. Apologies, Your Honor. I'll do my best. Thank you. It's hard. It involves an adjustment of status application, a denial of an adjustment of status application, the authority to adjudicate for which is in the discretion of the Secretary of Homeland Security. The district court erred in granting summary judgment to Mr. Fofana for four reasons. First, the district court lacked jurisdiction to review the denial. Second, USCIS applied the correct definition of engaged in a terrorist activity when it solicited Mr. Fofana's application for solicitation of funds to ULIMO, a Tier 3 terrorist organization. Three, USCIS's denial adequately establishes that ULIMO's terrorist activity was authorized by its leadership. And four, the denial adequately establishes that Mr. Fofana knew or should have known that ULIMO was engaged in terrorist activity when he solicited the funds. Counsel, assuming we have jurisdiction, do we only have to talk about issue four? Yeah. Assume we have jurisdiction, and if it's true that Fofana demonstrated by clear and convincing evidence he did not know and reasonably should have known that this was a terrorist organization, does that settle the case even if you want everything else? Your Honor, if this court were to hold that the district court lacked jurisdiction, the entirety of the – No, Counsel. I said assuming there's jurisdiction. Okay. Sorry, Your Honor. Excuse me. I'm sorry. That was my assumption. I may have talked too fast. Go ahead. If this court were to hold that there is jurisdiction to review, then the government's position would be the only two issues that should be reviewed would be the definition of engaged in any terrorist activity and whether ULIMO's authorized. The fourth issue is a purely factual question, and the government's position would be this court would lack jurisdiction there because Bremer only extended the jurisdiction to review to purely legal questions. And the fourth question of what Mr. Fofana knew is a purely factual question, whereas the other two are legal issues. Well, the factual question was found against you, right? Yes, Your Honor. And so we would hold that even if it were to hold it has jurisdiction, that jurisdiction should only extend to the legal issues, not purely factual issues. So if we agreed with the other side on four, we should dismiss for lack of jurisdiction. That's what you're saying? Apologies, Your Honor. If we said there's clear and convincing evidence he didn't know, okay, assume you win everything else, then you say dismiss for lack of jurisdiction. I'm sorry, Your Honor. I'm not quite understanding. I would say that we would still, regardless of this court with the whole Bremer applies and it has jurisdiction, that jurisdiction only extends to legal issues. I hear you saying the district court lacked jurisdiction to review Fofana's knowledge. Yes, Your Honor. That Bremer If there was jurisdiction over some parts of the case, you say the district court lacked jurisdiction to address that issue about clear and convincing evidence. Is that your position? Yes, Your Honor, because, again, Bremer You would seek reversal on the grounds the district court had no authority to even decide that point. Yes, Your Honor. All right. Apologies for the confusion. No, no, no. Thank you. Moving on to the more in-depth and the jurisdictional issue, Mr. Fofana's adjustment application and its adjudication But if you're wrong about that, you would also take the position that there was not clear and convincing evidence? Yes, Your Honor. Even if this Court were, again, to disagree with the government's position, the decision does adequately establish that Mr. Fofana knew or should have known that Ulema was engaged in terrorist activity. I think Judge Bentley's question originally, if I may, or I'll try it on my own. No, no. Go ahead. I think the question was, if we got all the way to that last issue and the Court had broad jurisdiction, and if the district court was upheld on that point, then Fofana would prevail? It would — the district court's holding that would have to be remanded to the agency for determination in line with this decision would be upheld because it would still have to review and make a decision in lines with the Court's ruling on that fourth issue. I see. Okay. Go ahead. Did you want to talk about the first threshold jurisdiction? Certainly, Your Honor. So the adjustment of status application in this instance is governed by 1159B, which sets forth the requirements for adjustment of status and specifies that the adjudication of that application is in the discretion of the Secretary of Homeland Security. 8 U.S.C. 1252A2B2 specifically states that any other decision or action of the Attorney General or the Secretary of Homeland Security, the authority for which is specified under the subchapter is to be in the discretion of the Secretary of Homeland Security is beyond the jurisdiction for courts to review. As this — the Eighth Circuit, as this Court held in Fugula, two items are necessary to invoke this jurisdictional bar, a decision or action by the Secretary in statutorily prescribed discretion under the statute. Both issues are met here. The decision or action by the Secretary, here the decision to deny the adjustment of status application in statutorily prescribed discretion under the statute. 1159B clearly states that such decisions are in the — are in the discretion of the Secretary of Homeland Security. The district court, in reaching and claiming that it did have jurisdiction, attempts to characterize and relies on a line of precedent that exists in — as stated in Bremer that predicate legal decisions that lead up to the ultimate discretionary decision can be reviewed. But this is a distinction without meaning. Again, 1252a2b2 is clear. It specifically states the authority for which is specified. Here, the Secretary in U.S.A.S. has the authority to adjudicate the application in their discretion. That covers all other aspects of the decisionmaking process and is in their discretion. This is particularly relevant in line with the Supreme Court's intervening decision in Patel v. Garland, which looked at the neighboring provision of a2b2 at a2b1. There appear — But pure — they call it statutory eligibility issue. Do you agree that there have got to be some statutory eligibility criteria that are not in the discretion of the Secretary? No, Your Honor. Not any? Not — and when it comes in the context of making the — not when it comes into — if it comes up in the process of making the decision, that statutory eligibility criteria is part of the decisionmaking process of the Secretary and falls under the grant of discretion at 1159b. Again, the authority for which is specified to be in the discretion of the Secretary. The authority to make the denial is in the discretion of the Secretary of Homeland Security, and that covers the eligibility criteria. And again, we can see this in — as the Supreme Court reached in Patel, which looked at b1, which held that the language there had expansive meaning, which covered all aspects of the judgment, including those that were nondiscretionary. b1 helps governs b2, as the Supreme Court held in Kuchana. We must look to — the Supreme Court looks to whether the scope of b2 is a catch-all The Supreme Court leans on judgment, and judgment's not in subsection 2. Yes, Your Honor, but any other decision or action is even — would, as some courts have held, is even more expansive than any judgment. And again, we can look to the — see how the Fourth Circuit treated this in Chaiban v. Judau, where it looked and noted that the catch-all nature of b2 and the similar language, expansive language of any. This — this language should command a similar result in b2 as in b1. What was your point about Kuchana? Your Honor, that the Supreme Court held that in Kuchana, that b1 and b2 — the scope of b2 help — help as informed by b1. And so that if we look at the Supreme Court's treatment of b1, that should help inform how we treat the scope of b2. Assuming this Court were to disagree that — that Patel and its intervening change in Tagula doesn't impact Bremer and that the district court did have jurisdiction, the district court still erred — erred in its decision. The first is the definition of engaged in a terrorist activity. The inadmissibility grounds at 1182a3b11 specify that anyone who engaged in a terrorist activity is inadmissible. There are two sub-definitions that help inform what constitutes engaged in a terrorist activity. That is, the definition of terrorist activity at subsection b3, and then engage in terrorist activity at subsection b4. What we see in subsection b3, there are seven — sorry, six discrete violent acts which Congress was concerned about in treating terrorist activity. We then look to b4, where Congress sets out all of the different ways an individual could participate in those six discrete violent acts. And this covers a wide range of activity, from committing that act itself to helping facilitate that act, either by planning it or gathering information for it, or soliciting funds for an — for the act or the organization, or providing material support to a terrorist organization. Again, what we see here is that Congress was concerned with a broad scope of activity, and all of that activity is encompassed in 1182a3b11. If you previously did these items, you are inadmissible. And this is how courts have consistently treated this language, including this circuit in the Day v. Barr, where it walked through the requirements for adjustment of status and then walked through the inadmissibility sections and applied both the definition at b4 and b3 to the inadmissibility ground. Now, the district court noted and rejected this in noting that it doesn't share the precise language and that no court has looked at the specific statutory context — the statutory meaning of each language. However, there's a clear reason for this, and it's because the statutory text is clear. Congress was deliberate in its use of the word engaged. The district court's decision requires a reader to ignore Congress's use of the word engage in subsection b11. The district court's reading would require and would only allow someone to be inadmissible if they had previously committed those six discrete violent actions, as opposed to all of the other activity that is encompassed in subsection b4. This is an — would lead to absurd results where some — the only individual that could be held inadmissible for a previous terrorist activity is, for example, someone who committed an assassination. Only the trigger man himself would be applicable under b11, not the person who planned the assassination, not the person who gathered information for the assassination, and not the person who funded the assassination. All of those individuals could only be held inadmissible based off how that would relate to whether they will commit a future terrorist activity. This is an absurd result, and all of the subsequent amendments to the Terrorist Act, this is what Congress intended. Quickly moving on to the third reason why the district court erred, in that it — the decision adequately establishes that ULIMO was engaged in terrorist activity — sorry, adequately established that the leadership of ULIMO authorized the terrorist activity that ULIMO was engaged in. The district court position is that when USCIS determined ULIMO was a terrorist organization, it didn't make a finding of authorization, which it was required to do. The government admits that this specific finding was not made in the section discussing whether ULIMO is a terrorist organization, but elsewhere in the decision, it specifically notes that the other forms of violence that ULIMO was engaged in were not due to the actions of individual members acting on their own. It's suggesting that it was authorized by leadership, and this is sufficient to discern and — and held that it was established, that — and there was authorization. And finally, on the purely factual question of whether Fofana knew or should have known that ULIMO was engaged in terrorist activity when he solicited funds for them, noting the jurisdictional aside, Fofana's testimony establishes that he knew he was funding terrorist activity. He specifically stated he was raising funding for fighters. He knew that that would cover the broad range of violent activities, which is covered under the definition of terrorist activity. He also knew that, in his own testimony, that this was a group that was acting independently in the government in Liberia based on his own statements. For those reasons, the district court erred, and we would urge this court to reverse. Thank you. Thank you for your argument. Mr. Giebink, we'll hear from you. May it please the Court, my name is Cameron Giebink, and I represent Abrahim Fofana. This case come down to — You're going to have to speak up for me. I apologize, Your Honor. This case comes down to congressional definitions, plain language, and a clear statutory structure. Both issues are ultimately resolved on the text. First, the government seeks to add the word regarding to a jurisdictional stripping statute in which it does not appear. Second, it seeks to remove the Article A from the applicable inadmissibility bar, thus rendering an express cross-reference in the adjacent inadmissibility bar mere surplusage. Now, neither of these courses of action is appropriate given the fact that this Court is bound by the plain language of the statutes. As such, the district court properly exercised jurisdiction to remand this matter to the agency for an adjudication consistent with the clear construction of the statute. To be clear, all we are asking for is an affirmation of a remand to the agency. Now, as for the jurisdictional issue, it is our position that this Court remains bound by prior panel decision in Bremer and that Figula and Patel did not affect that. In Bremer, this Court held that predicate legal questions, including, for example, whether statutory conditions precedent to the agency's authority to exercise discretion, are — remain reviewable. That remains the case today under the provision at issue here, which is 1252A2Bii. Patel addressed a separate provision with statutory differences that are important and I'll talk about in a moment. But Figula did — in interpreting the same statute, found that while the provision at issue here operated in the same way to shield review as one, it only did so if that decision is specified under the subchapter to be in the discretion of the Attorney General. Now, that language is, therefore, cabined. And looking at Figula, my reading of it, and I know, Judge Benton, I know you wrote the decision, so I will not, you know, lecture the Court on it. Judge Colligan is also on the panel, as I recall. I said what? Judge Colligan is on the panel.  Go ahead. Oh, yes. And to be respectful, go ahead. I apologize. My understanding was — I apologize for that — was that the antecedent issue, the issue there was the authority to — to promulgate regulations. So they could adjust status pursuant to the regulations in his discretion and pursuant to such regulations as they would promulgate. And the regulation — that authority to create the regulations is what made it a statutory and federally designated discretionary determination. That's consistent with Chidjadi and Geta from the Fifth and Third Circuits, which stated that, and I quote, Section 1255 expressed the leaves not only the ultimate decision to adjust the applicant's immigration status, but also the actions taken in the course of the decision-making process to the Attorney General's discretion. And in Geta, the Third said that it applies to not all decisions, but to a narrower category where Congress has taken the additional step to specify that the sole authority of the action is taken in the Secretary's discretion. And so here we have a statute that has a two-part analysis. There's first the mandatory determination of admissibility. That was where the decision was rendered here. And then discretion. That first part is reviewable. And that's consistent — Why doesn't the phrase any other decision in B-2, though, encompass those? Because they're part of the decision on adjustment. Certainly, Your Honor. That any language, as interpreted in Patel, is expansive, and it does include, you know, decisions made through the process. Right. But the language then — Even without the word regarding, the Court says any judgment means not just discretionary judgments or the last-in-time judgment. Yes. Why wouldn't it follow that any other decision doesn't mean only non-discretionary judgments or last-in-time decision? I'm sorry. Not just discretionary decisions or last-in-time decisions. The reason is the tie to the plain text, which says the authority for which is specified under the subject are to be in the discretion of the Attorney General. The authority for which. The authority for which. The authority for which. Yeah. And so the authority for which that specific decision — Which specific decision? The decision that is at issue, the decision as to eligibility or whichever decision, because that any — Why would you say any other decision is narrow and focused on one specific decision when the court in Patel says any is broad and doesn't limit to one specific decision or judgment? So any applies to all decisions throughout the process. But the decision in question, the decision in question must be tied to the specific authority to make that decision, and that's consistent with the Supreme Court's language in Borfa, where it held, and I'm quoting here, and it held this — it said this twice, including it in the first paragraph, but — Which case now? Borfa, which is a Supreme Court case that postdated Patel. It said that properly identifying the mandatory or discretionary nature of the particular agency decision can be critical because that status has implications on whether the agency's decision can be challenged in court. So it's the particular decision. And, yes, it applies to all decisions throughout the process, but that particular decision needs to be specifically authorized as discretionary. And that's why in Thigoula, we had a decision where the antecedent issue was itself identified as discretionary. And so in Thigoula, it makes sense that jurisdiction was stripped. But here we have a mandatory predicate issue, and jurisdiction is properly exercised consistent with the plain text. Say the name again of the Supreme Court. I mean, I couldn't understand you. Yes, Your Honor. It's Borfa. It's 604. Borfa? How do you spell it? B. B-O-R. B-O-U-R. B-O-U. Got it. Yeah. Yes, Your Honor. 604. I have the site. Okay. Wonderful, Your Honor. I just couldn't hear you. I apologize. So the particular agency, and this particular argument that we were raising today was raised in Borfa. There, there were no antecedent issues that were discretionary in nature. But the Supreme Court assumed that our argument was correct. Now, that's dicta. It is not binding on this Court. But it is suggestive that jurisdiction remains over these antecedent legal issues. It didn't really address two or two's scope, right? But it suggests, would you say suggests an error of scope? I think that's the strongest word you can put on it, suggests an error of scope for Subsection 2. I think that the absence of regarding is really what carries the day on that point. I'm talking about what the Supreme Court said in the, how do you pronounce the case? In Borfa. And I apologize if I'm not pronouncing it.  We'll call it that. Go ahead. I believe that they suggested as much. I do not think they held as much. Right. I would not say it's binding. Okay. And so the contrast with Sub 1 is important. And that's the issue, the case at issue in Patel. There we had the Supreme Court saying that the use of regarding in a legal context is generally, generally has a broadening effect, ensuring that it covers not the scope of the provision, but of the thing relating to that subject. And the government continually comes back to relating to in its briefing. But that's tied to the word regarding, which never appears in the provision at issue here. And so I think that's the core point. You cannot import regarding from Sub 1 into Sub 2 to the point of under the authority of which we're sorry, the language is the authority for which is specified under the subject or to be in the discretion of the Attorney General. They argue that's not discretionary decisions. The Supreme Court in Kakana described this provision as covering, and I'm quoting, decisions made discretionary by legislation. In Figula, this Court called it the Attorney General's discretionary decisions. And in Borfa, they referred to it as discretionary decisions. And so the notion that the sort of ultimate last-in-time discretionary nature swallows the rest of it simply runs contrary to Supreme Court precedent and the plain language of the statute. Moving on to the substantive portion of the case, this is actually a fairly simple case. The government simply hitched the wrong definitional section to the proper operative inadmissibility provision. So if we look at the statute as a whole, there are nine operative sections that can make a person inadmissible. They're followed by discrete definitional sections, and those definitions plug in. And so the first operative section, which the government invoked here, links with the definition of terrorist activity. It says that any alien who has engaged in a terrorist activity is inadmissible. Terrorist activities are the six provisions identified, you know, easily identifiable terrorism, use of weapons to endanger people or property, and also, importantly, a conspiracy to engage in any of those provisions, which gets to the government's point about suddenly rendering every person but a trigger man admissible. That's not true. They have the conspiracy provision. They didn't use it here. The second operative provision then says that any person who the Secretary has reason to believe is engaged in or likely to engage in terrorist activity, as defined at subsection 4 with an express cross-reference, is also inadmissible. And that's where the larger solicitation statute issue comes in. Well, counsel, because Congress was so clear in number 2, don't you think has engaged in a terrorist activity includes both 3 and 4? No, Your Honor. And the reason is that it's just not consistent with the plain text. Well, the plain text is so simple. It shocks you. Has engaged in a terrorist activity. A terrorist activity. Yeah. So the defined term is engage in terrorist activity, not engage in a terrorist activity. And what the Supreme Court said in Ms. Chavez is that where a singular article falls outside of the defined term, it modifies the entire definition. The term terrorist activity is not the same as the term engage in terrorist activity. They're just clearly different. It's a more capacious meaning. And the inclusion of that article at the first necessarily takes it out of the precise defined term used by Congress. And the government in its efforts in briefing never offers answers to 3 important questions. And I think the first is why have separate provisions at all if they both encompass the same conduct? Why is the language different between those provisions? And why does the second include a specific cross-reference while the first does not? Reading it as the government would, would render the Article A surplusage. It would write it out of the statute entirely. And it would make the cross-reference at the next provision entirely unnecessary. Now, the government seems to argue that the way you engage in a terrorist activity is through engage in terrorist activity. Elsewhere in its brief, it argues that the definition at 3, terrorist activity, is necessary to define the definition at 4, engage in terrorist activity. And it becomes — It doesn't mean has to be one. It can be many. Engage in a terrorist activity. Well, any or all. Yes. Any of the six listed terrorist activities or a conspiracy to engage in any of them. Yes, of course. But the broader definition at 4 cannot plug into and define operative 1. It defines operative 2, the second operative provision. And the definition, the attempt to say that engage, that 4 defines how you engage in a terrorist activity fails for at least six reasons. First, it's not what Congress wrote. It could have written has engaged in terrorist activity as an admissible. It didn't. It wrote has engaged in a terrorist activity. Second, the term terrorist activity, or sorry, a terrorist activity, that a with the article, it appears six times in the statute, including repeatedly as references to one of the six activities in the definition, the broader definition of engage in terrorist activity. How is it that you could engage in terrorist activity without engaging in a terrorist activity? The definition is broader. And actually, an interesting thing when they ---- Which definition? The definition of engage in terrorist activity includes things like material support. It includes things like solicitation at issue here. Those are not ---- If Congress says those things constitute engaging in terrorist activity, then why wouldn't doing any one of them amount to engaging in a terrorist activity? Because a terrorist activity is more narrowly defined. Terrorist activity is the sixth thing. I can't ---- I apologize. More narrowly defined. Well, counsel, they don't define ---- That's not a defined term. Engage in a terrorist activity is not a defined term. Terrorist activity is a defined term. Yes. So you ---- But so is engage in terrorist activity. But not engage in a terrorist activity. That is the difference. I think we agree that that's not a defined term. But we're still one ---- I'm still wondering why is it that you can engage in terrorist activity without engaging in a terrorist activity? Because under Operative Provision 2, engaging in broader terrorist activity makes you inadmissible if it's likely that you're doing it now or you're likely to do it in the future. And so they are separately defined terms, and the defined terms of Congress are applied to the subsections in which they apply. What do you mean when you say Operative Provision 2? Yeah, I ---- I apologize. I don't understand your jargon. The first section that makes you inadmissible if you have engaged in a terrorist activity. The second makes you inadmissible if the Secretary has reason to believe you're engaged in or likely to engage in terrorist activity as defined as Subsection 4. And so that's the second Operative Provision. Can you ---- I don't see the ---- I'm looking at the statute. You refer to the section number of the statute so we could follow along? I apologize, Your Honor. It is 1182A3BI. All right. Slow down. Slow down. You have to go real slow on that. I do see I'm out of time as well.  Yes. Terrorist activities in general. So has engaged in a terrorist activity. That's B11. Yes. The second ---- Go ahead. Go ahead. And the second is A3BI2? Well, 2, 3, and 4 are just definitions. There's an exception in 2. 3 and 4 are strictly definitional. A3BI2. It says that ---- I'm looking at it. The Secretary has reason to ---- I as in general, BI as exception, 3 and 4 are definitional. BI1 is has engaged in a terrorist activity, is inadmissible. Yes. BI2, a consular officer, the Attorney General, or the Secretary of Homeland Security has reasonable ground to believe is engaged in or likely to engage after entry in any terrorist activity as defined at Clause 4. But what difference does that make in terms of what Judge Collison's question about A, terrorist activity? Well, the ----  Why would Congress have put in two provisions at all if they cross-referenced the same type of conduct? Why have a difference between has engaged in A and a separate provision for is engaged in or likely to engage in with an explicit cross-reference? One is retrospective and one is prospective. But if ---- Has engaged means he's already done it. After entry in any terrorist activity. Yes. So it was completely ---- well, it has its own purpose. It does have its own purpose. But why not include a single provision if they both meant and cross-referenced the same thing? The government actually points this out on page 25. That's the reviser of statutes. I think the government is the one that's asking you to read language out of the statute. No, they're not. It is asking you to remove the word A from has engaged in A terrorist activity and import a broader definition. You can't answer a question as why it has any meaning at all. I absolutely ---- I'm sorry. I don't ---- what has any meaning? Well, A terrorist activity, that means anything defined in 3. As terrorist activity, yes. Yes. And not anything defined at 4 as engage in terrorist activity. I agree that it means exactly what it says at definition 3, those six activities, but not beyond that. They are saying it expands beyond that. All right. Well, how essential is this focus on A? Because you couldn't have come less far from convincing me. It is the critical difference, but really it comes down to the express defined terms in quotes in Congress. Those defined terms are applied narrowly and strictly as applied through the statute. There's no ---- there would be no ---- Now, who are you quoting? Are you quoting a treatise or something? This would be ---- Van Buren would be the case. I apologize. I can pull the exact quote. It is in our briefing as well. All right. Well, we can look at it in the briefing. Your time has expired, so we thank you for your argument. Thank you, Your Honor. We'll hear brief rebuttal. Thank you, Your Honors. Real quickly on rebuttal, given the limited time, I want to quickly address the discussion of BORFA. It is the government's position that BORFA is of no movement here, as the Supreme Court specifically noted, that it was not reaching a decision on B2, and that that still remained a ---- that that still remained an open question. Do you agree with the word suggest? I agree with the word suggest. Suggest a narrow scope for two than one? I don't think it suggests a narrow scope, because I think we have to look at the  Well, what verb do you use for what they said? I would say that it specifically notes that that is an open question there, and that the discussion of whether ----   And the discussion of whether you have to look at decision, of whether it is discretionary or non-discretionary or mandatory speaks to the ultimate decision that is made, as it was in Patel. For the foregoing reasons, the Court should reverse the disreport. Thank you. Very well. Thank you to both counsel for your arguments. The case is submitted, and the Court will file a decision in due course. Counsel are excused.